| | |
|---|---|
| MARK EDWARD NIETERS,<br><br>      Plaintiff,<br><br>v.<br><br>BRANDON HOLTAN; DANA WINGERT;<br>and CITY OF DES MOINES, IOWA,<br><br>      Defendants. | **No. 4:21-cv-00042-RGE-HCA**<br><br><br>**ORDER RE: PENDING MOTIONS** |

## I. INTRODUCTION

Plaintiff Mark Edward Nieters sues Defendants Brandon Holtan, Dana Wingert, and the City of Des Moines, Iowa, for violations of his rights under the United States Constitution and the Iowa Constitution, and for related claims under Iowa law. Nieters's claims arise from events following a June 1, 2020 protest related to the death of George Floyd. Defendants move for summary judgment on Nieters's claims. Nieters moves to strike Defendants' expert report.

For the reasons set forth below the Court grants in part Defendants' motion for summary judgment and remands Nieters's remaining claims. The Court denies Nieters's motion to strike as moot.

## II. BACKGROUND

The following facts are either uncontested or, if contested, viewed in the light most favorable to Nieters for purposes of Defendants' motion for summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

In late May and early June of 2020, protests related to the death of George Floyd occurred in Des Moines, Iowa. *See* Pl.'s Resp. Defs.' Statement of Facts ¶¶ 1, 5, ECF No. 42. Rioting followed some of the protests. *Id.* ¶¶ 1–2. During the riots, crowds damaged businesses and buildings and threw objects at law enforcement officers. *Id.* ¶¶ 2–3. The events related to Nieters's

claims occurred on June 1, 2020, which marked the fourth night of rioting following protests. *See id.* ¶¶ 1–2. That night, Des Moines Police Officer Brandon Holtan worked in his capacity as a member of the "multi-agency tactical squad called Metro STAR," which stands for "Special Tactics and Response Unit." *Id.* ¶¶ 6–8. The Metro STAR team is tasked with "provid[ing] the public with a prepared and professional emergency response and defensive capability to manmade and naturally occurring critical incidents." *Id.* ¶ 10.

Nieters attended the June 1, 2020 protest at the Iowa Capitol Building to photograph the event. *See id.* ¶¶ 5, 11, 14. Nieters had press credentials on his person, but was not displaying them. *Id.* ¶ 13. Nieters was wearing a blue helmet, a painter's mask, and nonblack clothing. *Id.* ¶ 12. Following the organized protest, several hundred individuals remained on the Capitol grounds. *See id.* ¶¶ 14–15. The group marched downtown and then back to the Capitol grounds, returning at 10:45 p.m. *Id.* ¶ 16. Nieters followed the group. Nieters Dep. 26:10–21, Defs.' App. Supp. Mot. Summ. J. 234, ECF No. 33-2. Defendants contend the group engaged in property damage, obstruction of public roads, and violence. ECF No. 42 ¶ 19; Case Summary Report, Defs.' App. Supp. Mot. Summ. J. 11, ECF No. 33-2 (generally describing remaining protest participants engaging in "violent, intimidating[,] and destructive behavior [i]n the evening hours" of June 1, 2020 (citing ECF No. 33-2 at 11)). Between 11:30 p.m. and 11:43 p.m., law enforcement officers read five dispersal orders at the Capitol grounds. *See* ECF No. 42 ¶¶ 20–22. Law enforcement officers had been notified to effect arrests after the fifth and final dispersal order was given. *See* Holtan Dep. 56: 9–13, ECF No. 33-2 at 92. Nieters denies hearing any dispersal orders and is uncertain if he was present when the orders were read. ECF No. 42 ¶ 22.

At 11:46 p.m., law enforcement officers deployed tear gas at the Capitol grounds. *Id.* ¶ 25. Groups moved west, away from the Capitol grounds. *Id.* ¶ 27. Nieters left the Capitol grounds before any tear gas was deployed. *See id.* ¶¶ 25, 28. Nieters followed a group headed west on

Locust Street. *Id.* ¶ 35. While following the group, Nieters witnessed a physical altercation between twelve individuals and two law enforcement officers. *Id.* ¶¶ 31–32. While the group moved along Locust Street, dispatchers were providing information about the group to Holtan and other law enforcement officers who were traveling parallel to the group. *Id.* ¶¶ 41, 43–44. Dispatch informed law enforcement officers that windows had been broken at a business. *Id.* ¶ 42. When Nieters approached the Embassy Suites hotel on Locust Street, he observed individuals running along the west side of the hotel in response to tear gas. *Id.* ¶ 39. Dispatchers informed law enforcement officers of the group's movements, including that members of the group were in the parking garage on East 2nd Street and Locust Street and members of the group were running north on Robert D. Ray Drive. ECF No. 42 ¶ 44; *see* Armstrong Body Camera 11:50–12:35, ECF No. 33-2 at 467. Holtan ran toward a group traveling north on Robert D. Ray Drive. *Id.* ¶ 46. While pursuing these individuals, Holtan observed Nieters and believed he was a part of the larger group of "unlawful assemblers." *Id.* ¶ 50; *see also* Holtan Dep. 74:7–8, 75:3–12, ECF No. 32-2 at 110–11. Holtan perceived the straps on Nieters's shoulders as backpack straps rather than straps to Nieters's cameras. ECF No. 42 ¶ 52. Holtan testified that Nieters's attire of a helmet, mask, and what appeared to be a backpack reminded him of a previous encounter with a rioter. Holtan Dep. 76:20–23, ECF No. 32-2 at 112. At some point, Nieters turned away from Holtan. ECF No. 42 ¶ 55. Holtan told Nieters to get on the ground. *Id.* ¶ 54. Holtan testified he believed Nieters intended to flee. *Id.* ¶ 56. Nieters put his hands up. *Id.* ¶ 60; *see also* Pl.'s App. Supp. Resist. Defs.' Mot. Summ. J 7, ECF No. 42-2. "Holtan reached around Nieters, grabbed him around the chest, sprayed him with OC spray, and took him to the ground." ECF No. 42 ¶ 61. Holtan testified these events—Nieters turning to run, Holtan's command, and Holtan's use of pepper spray—happened "almost simultaneously." Holtan Dep. 84:11–24, ECF No. 32-2 at 120. Holtan zip tied Nieters's wrists. ECF No. 42 ¶ 68. Nieters informed Holtan he was a member of the press and Holtan

reviewed the press credentials located in Nieters's back pocket. *Id.* ¶¶ 69–70. Holtan testified he continued with Nieters's arrest because he did not want to be perceived as treating Nieters more favorably than any other citizen who was arrested. *Id.* ¶ 71. Nieters complained to other law enforcement officers about the tightness of the zip ties. *Id.* ¶ 74. He was in zip ties for approximately twenty minutes. *Id.* ¶ 78. For ten of the twenty minutes, law enforcement officers were attempting to remove the zip ties. *Id.* Other journalists in the same immediate area as Nieters were not arrested. *Id.* ¶¶ 79–81.

Nieters was booked into the Polk County Jail. Pl.'s Statement Facts Supp. Resist. Defs.' Mot. Summ. J. ¶ 85, ECF No. 42-1. Nieters was charged with one count of failure to disperse in violation of Iowa Code § 723.3. *Id.* ¶ 86. On August 13, 2022, the State of Iowa filed a motion to dismiss Nieters's charge, stating it was "unable to sufficiently document [Nieters's] actions for charges to go forward at th[at] time." *Id.* ¶ 97; ECF No. 42-2 at 39 (Notice of Intent Not to Prosecute). The Iowa District Court for Polk County granted the State's motion. ECF No. 42-1 ¶ 98; ECF No. 42-2 at 40–41 (Order of Dismissal).

For seventeen days after his arrest, Nieters experienced sore ribs from being taken to the ground. ECF No. 42 ¶ 105. More than two months after his arrest, Nieters sought medical attention for pain to his right wrist. *Id.* ¶¶ 97–99. Nieters missed one day of work. *Id.* ¶ 102. Nieters's arrest brought up traumatic incidents from his international photography work. *See id.* ¶¶ 103, 106.

Nieters filed a twelve-count complaint against Defendants in the Iowa District Court for Polk County. Compl., ECF No. 1-1. Defendants removed to this Court. Notice Removal, ECF No. 1. Nieters alleges claims against Holtan for: illegal seizure and excessive force in violation of his Fourth Amendment rights and his rights under Article I, section 8 of the Iowa Constitution (Counts 1 through 4); retaliation in violation of his First Amendment rights and his rights under Article I, section 7 of the Iowa (Counts 5 and 6); malicious prosecution in violation of Iowa law

(Count 9); false imprisonment in violation of Iowa law (Count 10); assault and battery in violation of Iowa law (Count 11); and libel in violation of Iowa law (Count 12). ECF No. 1-1 ¶¶ 73–115, 136–57. Nieters alleges claims against Wingert and the City of Des Moines for deliberately indifferent policies, practices, customs, training, and supervision in violation of the First, Fourth, Fifth, and Fourteen Amendments to the United States Constitution (Count 7) and in violation of Article I, sections 6, 7, and 8 of the Iowa Constitution (Count 8). *Id.* ¶¶ 116–35.

Defendants move for summary judgment. ECF No. 33. Nieters resists as to all counts except Nieters's claims for deliberately indifferent policies, practices, customs, training, and supervision in Counts 7 and 8. ECF No. 45. Nieters moves to strike Defendants' expert report. ECF No. 46. Defendants resist. ECF No. 47. Neither party requests a hearing on the motions. The Court decides the motions without oral argument, finding the parties' briefing and exhibits adequately present the issues. *See* LR 7(c); Fed. R. Civ. P. 78(b). Additional facts are set forth below as necessary.

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, the Court must grant a party's motion for summary judgment if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine issue of material fact exists where the issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

When analyzing whether a party is entitled to summary judgment, a court "may consider only the portion of the submitted materials that is admissible or useable at trial." *Moore v. Indehar*,

514 F.3d 756, 758 (8th Cir. 2008) (internal quotation marks omitted) (quoting *Walker v. Wayne Cnty.*, 850 F.2d 433, 434 (8th Cir. 1988)). The nonmoving party "receives the benefit of all reasonable inferences supported by the evidence, but has 'the obligation to come forward with specific facts showing that there is a genuine issue for trial.'" *Atkinson v. City of Mt. View*, 709 F.3d 1201, 1207 (8th Cir. 2013) (quoting *Dahl v. Rice Cnty.*, 621 F.3d 740, 743 (8th Cir. 2010)). "In order to establish the existence of a genuine issue of material fact, a plaintiff may not merely point to unsupported self-serving allegations." *Anda v. Wickes Furniture Co., Inc.*, 517 F.3d 526, 531 (8th Cir. 2008) (cleaned up). "The plaintiff must substantiate [the] allegations with sufficient probative evidence that would permit a finding in [plaintiff's] favor." *Smith v. Int'l Paper Co.*, 523 F.3d 845, 848 (8th Cir. 2008) (internal quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and the moving party is entitled to judgment as a matter of law. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042–43 (8th Cir. 2011) (en banc) (internal quotation marks omitted) (quoting *Ricci*, 557 U.S. at 586).

## IV.  DISCUSSION

First, the Court analyzes Defendants' motion for summary judgment on Nieters's federal law claims. Next, the Court addresses Nieters's state law claims. Finally, the Court addresses Nieters's motion to strike.

### A.    Defendants' Motion for Summary Judgment—Federal Law Claims

Defendants move for summary judgment on Nieters's claims under 42 U.S.C. § 1983 for deliberately indifferent policies, practices, customs, training, and supervision (Count 7), unlawful arrest (Count 1), excessive force (Count 3), and retaliation (Count 5). ECF No. 1-1 ¶¶ 73–77, 84–89, 96–105. Defendants argue, in part, they are entitled to qualified immunity on Nieters's claims in Counts 1, 3, and 5. *See* ECF No. 36-1 at 11–13, 29–35.

First, the Court addresses Defendants' unresisted motion for summary judgment on Count 7. Then, the Court addresses Nieters's remaining federal law claims. The Court sets forth the law regarding qualified immunity. Finally, the Court considers whether Defendants are entitled to qualified immunity on Nieters's § 1983 claims for unlawful arrest, excessive force, and retaliation in Counts 1, 3, and 5.

### 1. Deliberately indifferent policies, practices, customs, training, and supervision (Count 7)

Defendants move for summary judgment on Nieters's claim for deliberately indifferent policies, practices, customs, training, and supervision under federal law in Count 7. ECF No. 36-1 at 36–39. Nieters does not resist Defendants' motion as to Count 7. ECF No. 45 at 2. Because Nieters does not resist Defendants' motion as to this claim, it follows that Nieters does not generate a genuine issue of material fact on his deliberate indifference claim.

The Court grants this unresisted portion of Defendants' motion for summary judgment on Count 7.

### 2. Qualified immunity

Title 42 United States Code section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

State actors sued under § 1983 may assert qualified immunity. *See Goffin v. Ashcraft*, 957 F.3d 858, 861 (8th Cir. 2020). Under this doctrine, "government officials performing

discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The party asserting qualified immunity has "the burden to establish the relevant predicate facts, and at the summary judgment stage, the nonmoving party is given the benefit of all reasonable inferences. If there is a genuine dispute concerning predicate facts material to the qualified immunity issue, the defendant is not entitled to summary judgment." *White v. McKinley*, 519 F.3d 806, 813 (8th Cir. 2008) (internal citations omitted).

Qualified immunity analysis has two steps. One: a court must decide whether the facts alleged "make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Two: "the court must decide whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Id.* (internal quotation marks and citation omitted). "Although the defendant bears the burden of proof for this affirmative defense, the plaintiff must demonstrate that the law was clearly established." *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007). "If either [inquiry] is answered in the negative, the public official is entitled to qualified immunity." *Norris v. Engles*, 494 F.3d 634, 637 (8th Cir. 2007) (internal quotation marks and citation omitted). The steps need not be addressed in the order identified. *Pearson*, 555 U.S. at 236.

A right is clearly established if, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). This requires "controlling authority" or "a robust 'consensus of cases of persuasive authority'" establishing the right. *Id.* at 741–42 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). Rights may not be defined "at a

high level of generality." *Id.* at 742. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (internal quotation marks and citation omitted).

### 3. Unlawful arrest (Count 1)

In Count 1, Nieters alleges Holtan violated his rights under the Fourth Amendment by arresting him without reasonable suspicion or probable cause. *See* ECF No. 1-1 ¶¶ 73–77. Defendants move for summary judgment on Count 1, arguing Holtan is entitled to qualified immunity. ECF No. 36-1 at 13–18. Defendants contend Holtan had probable cause to arrest Nieters and thus did not violate Nieters's constitutional rights. *Id.* at 13–16. Defendants also argue the right to be in the immediate proximity of a riot or unlawful assembly was not a clearly established right. *Id.* at 16–18. Nieters resists, arguing questions of fact as to whether probable cause existed to arrest him preclude summary judgment on his unlawful arrest claim. ECF No. 45 at 15–25.

"A warrantless arrest does not violate 'the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" *White v. Jackson*, 865 F.3d. 1064, 1074 (8th Cir. 2017) (quoting *Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir. 2011)). "Probable cause exists to make a warrantless arrest when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1009 (8th Cir. 2017) (internal quotation marks and citation omitted). "Probable cause . . . is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians act." *Bell v. Neukirch*, 979 F.3d 594, 603 (8th Cir. 2020) (omission in original) (internal quotation marks omitted) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). "In a case involving an arrest without probable cause, officers have qualified immunity if they reasonably but mistakenly conclude[d] that probable cause [wa]s

present. Th[e] [Eighth Circuit] often refers to this standard using the shorthand arguable probable cause." *Id.* at 607 (first and second alterations in original) (internal quotation marks and citations omitted). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is objectively reasonable." *Ehlers*, 846 F.3d at 1009 (internal quotation marks and citation omitted). "In other words, [the Court] must determine whether it was 'objectively legally reasonable' for an officer to conclude that the arrest was supported by probable cause." *Bell*, 979 F.3d at 608.

Nieters was arrested for failure to disperse in violation of Iowa Code § 723.3. ECF No. 42-2 at 33, 36. Section 723.3 provides: "A peace officer may order the participants in a riot or unlawful assembly or persons in the immediate vicinity of a riot or unlawful assembly to disperse. Any person within hearing distance of such command, who refuses to obey, commits a simple misdemeanor." Iowa Code § 723.3. Nieters argues there is a question of fact as to whether Holtan had probable cause to believe Nieters was part of or in the immediate vicinity of an unlawful assembly because Nieters left space between himself and the group and was not one of the individuals Holtan was initially chasing. ECF No. 45 at 18. Nieters also argues Holtan lacked probable cause to believe Nieters heard the dispersal orders at the Capitol grounds and refused to obey them when he encountered Nieters five blocks away from where the dispersal orders were given. *See id.*

The record demonstrates Holtan had arguable probable cause to arrest Nieters for failure to disperse. Dispersal orders were given at the Capitol grounds. Despite these orders, groups began traveling westward, including a "large" group that traveled westward on Locust Street. Nieters followed the group traveling on Locust Street. *See* Armstrong Body Camera 11:50–12:05, ECF No. 33-2 at 467. Dispatchers provided real time information to Holtan and other law enforcement officers about the "large" group's movements on Locust Street. *Id.* Dispatch informed law

enforcement officers that individuals were in the parking garage on Locust Street and that individuals were running northbound on Robert D. Ray Drive. *Id.* at 12:10–24. When Holtan chased a group of individuals on Robert D. Ray Drive, Holtan encountered Nieters. Holtan Dep. 74:7–8, ECF No. 33-2 at 110. Nieters was not displaying his press credentials. Though Nieters was not a part of the group Holtan was chasing, Holtan testified he understood there were individuals on Locust Street that were part of the larger group that moved westward after dispersal orders were read at the Capitol grounds. *Id.* at 75:3–12; *cf. Bernini v. City of St. Paul*, 665 F.3d 997, 1003 (8th Cir. 2012) ("[T]he Fourth Amendment is satisfied if the officers have grounds to believe all arrested persons were a part of the unit observed violating the law." (internal quotation marks and citations omitted)). This testimony reflects the information dispatch provided regarding the size of the group and its various movements along Locust Street.

The totality of the circumstances supports finding Holtan reasonably believed Nieters was in the immediate vicinity of an unlawful assembly, heard dispersal orders, and failed to comply with such orders in violation of Iowa Code § 723.3. Viewing the record in the light most favorable to Nieters, even if Holtan was mistaken in believing Nieters heard the dispersal orders and was following an unlawful assembly, such a mistake was objectively reasonable given the information Holtan received about a "large" group traveling on Locust Street. Dispatchers indicated individuals from the group were moving to various parts of Locust Street and the surrounding area, Nieters followed the "large" group from the Capitol grounds, and Nieters was not displaying his press credentials. *Cf. White*, 865 F.3d at 1075–76 ("The officers arrested [plaintiff] while he was standing with a group of people in an area that officers had been attempting to clear. On these facts, [the officers] could have reasonably concluded that [plaintiff] . . . chose not to disassociate himself from the assembly, had heard the dispersal orders, and chose not to disperse."). Nieters points to no evidence from which a reasonable jury could find Holtan lacked arguable probable

cause to arrest him for failure to disperse.

Because the record demonstrates Holtan had at least arguable probable cause to believe Nieters violated Iowa Code § 723.3, the Court need not consider the clearly established prong of the qualified immunity analysis. Holtan is entitled to qualified immunity on Nieters's § 1983 claim for unlawful arrest. Summary judgment is warranted on Count 1.

### 4. Excessive force (Count 3)

In Count 3, Nieters alleges Holtan used excessive force against him in violation of Nieters's Fourth Amendment rights. ECF No. 1-1 ¶¶ 84–89. Defendants move for summary judgment on Count 3, arguing Holtan used objectively reasonable force when arresting Nieters. ECF No. 36-1 at 23–29. Defendants also argue no clearly established law prohibited Holtan from using pepper spray and taking individuals to the ground to gain compliance "in the midst of an unlawful assembly." *Id.* at 29–31. Nieters resists, arguing questions of fact as to whether Holtan's use of force was objectively reasonable preclude summary judgment on Count 3. ECF No. 45 at 29–33.

"The Supreme Court has explained that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Peterson v. Kopp*, 754 F.3d 594, 600 (8th Cir. 2014) (internal quotation marks omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The test for a violation of a Fourth Amendment right to be free from excessive force is "whether the amount of force used was objectively reasonable under the particular circumstances." *Fischer v. Hoven*, 925 F.3d 986, 988 (8th Cir. 2019) (internal quotation marks and citation omitted)). The test "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *White*, 865 F.3d at 1074. "Because police officers are often forced to make split-second judgments—in circumstances that are

tense, uncertain, and rapidly evolving—the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Peterson*, 754 F.3d at 600 (internal quotation marks omitted) (quoting *Graham*, 490 U.S. at 396–97). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (internal quotation marks omitted) (quoting *Graham*, 490 U.S. at 396). "Objective reasonableness is judged from the perspective of a reasonable officer on the scene, in light of the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Fischer*, 925 F.3d at 988 (internal quotation marks omitted) (quoting *Graham*, 490 U.S. at 396 (1989)). The degree of injury suffered may also be relevant to show the amount and type of force used. *Id.*

The first two *Graham* factors weigh in favor of finding excessive use of force. Nieters was arrested for failure to disperse—a simple misdemeanor. Defendants highlight the vandalism occurring in the preceding nights. The record demonstrates Nieters witnessed violence between individuals and law enforcement officers while following the group from the Capitol grounds westward on Locust Street. However, Defendants point to no facts suggesting Nieters posed an immediate threat to the safety of officers or others. Holtan testified Nieters was "standing there" and was "still." Holtan Dep. 75:24, 76:15–17, ECF No. 33-2 at 111–12. As such, Nieters was a non-violent misdemeanant.

The third *Graham* factor weighs against finding excessive use of force. The encounter between Nieters and Holtan lasted a matter of seconds. During that time, Holtan observed Nieters while pursuing fleeing suspects. As discussed above, Holtan had arguable probable cause to believe Nieters was in the immediate vicinity of an unlawful assembly and failed to disperse. After Holtan observed Nieters, at some point, Nieters turned away from Holtan. Holtan simultaneously

commanded Nieters to get on the ground, pulled out his pepper spray, reached around Nieters and pepper sprayed him, and took him to the ground. The record supports finding Nieters turned away from Holtan before Holtan pepper sprayed Nieters. Considering Holtan was pursuing fleeing individuals when he observed Nieters, and Nieters turned away from him, a reasonable officer in Holtan's position would have—in the seconds leading up to the uses of force at issue—interpreted Nieters's conduct as an attempt to flee. *See Graham*, 490 U.S. at 396–97 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.").

The parties dispute whether Nieters moved away from Holtan. Nieters argues he did not move away from Holtan, but concedes he did turn away from Holtan. *See* ECF No. 45 at 31. Nieters argues he did not have the opportunity to comply with Holtan's command to get on the ground and therefore the jury must decide whether Nieters's conduct in turning away "meaningfully impacts Holtan's decision to use force." *Id.* Even accepting as true that Nieters did not move away from Holtan, a reasonable jury could find Holtan's actions in pepper spraying Nieters and taking him to the ground to arrest him for a failure to disperse violation were objectively reasonable when judged from the perspective of a reasonable officer on the scene. *Cf. Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1008 (8th Cir. 2003) ("Crumley contends she defensively moved away from the officer to keep him from getting hold of her once he pushed her. While Crumley's reaction may have been entirely natural, it nonetheless constituted resistance. Resistance may justify the use of greater force."); *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1011 (8th Cir. 2017) ("[Plaintiff's] argument that no force was appropriate because he was being arrested for a nonviolent misdemeanor and was not resisting is inapplicable because he at least appeared to be resisting."). The dispute about whether Nieters moved away from Holtan does not

diminish his act of turning away from Holtan. Such a factual dispute is insufficient to create a genuine issue for the jury as to whether Holtan used excessive force in arresting Nieters.

Even if there was a genuine issue of material fact as to whether a constitutional violation occurred, "[t]o defeat the defense of qualified immunity in a Fourth Amendment excessive force context, [p]laintiff[ ] must demonstrate that [his] right to be free from [d]efendants' particular use of force was clearly established at the time of the incident." *Molina v. City of St. Louis*, 2021 WL 1222432, at *10 (E.D. Mo. Mar. 31, 2021) (citing *Shelton v. Stevens*, 964 F.3d 747, 753 (8th Cir. 2020)). "Broadly speaking, [t]he right to be free from excessive force in the context of an arrest is clearly established under the Fourth Amendment." *Peterson*, 754 F.3d at 600 (alteration in original) (internal quotation marks and citation omitted). "That said, [w]hile there is no requirement that the very action in question has previously been held unlawful, [plaintiff] can succeed only if earlier cases give [defendant] fair warning that his alleged treatment of [plaintiff] was unconstitutional." *Id.* (first alteration in original) (internal quotation marks and citation omitted).

In his resistance, Nieters does not address the clearly established prong of the qualified immunity analysis. *See* ECF No. 45 at 29–33. A review of cases provides it is "clearly established that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." *Laird v. City of Saint Louis*, 564 F. Supp. 3d 788, 800 (E.D. Mo. 2021) (internal quotation marks omitted) (quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009)). "It was also clearly established that it is unreasonable to use pepper spray on a non-resisting, non-fleeing individual suspected of a non-violent misdemeanor." *Id.* at 800–01 (citing *Tatum v. Robinson*, 858 F.3d 544, 548-550 (8th Cir. 2017)). However, the Court did not locate any cases in which the use of pepper spray, a takedown, and zip ties is not objectively reasonable where a suspect, though a nonviolent

misdemeanant, turns away from an officer where a reasonable officer would believe the suspect was attempting to flee. As such, Nieters fails to show Holtan violated his clearly established right to be free from the use of pepper spray, a takedown, and zip ties under the circumstances.

The record demonstrates Holtan's use of force was objectively reasonable under the circumstances. The fact dispute about whether Nieters moved away from Holtan is insufficient to create a genuine issue of material fact where the undisputed record shows Holtan was pursuing fleeing suspects of a "large" group of unlawful assemblers, Holtan observed Nieters and commanded him to get on the ground, and Nieters turned away from Holtan. Even if this disputed fact were material, Nieters fails to show he had a clearly established right to be free from the use of pepper spray, a takedown, and zip ties when the circumstances would lead a reasonable officer to believe a suspect—though a nonviolent misdemeanant—is attempting to flee at the time of the incident. Holtan is entitled to qualified immunity on Nieters's § 1983 claim for excessive force. Summary judgment is warranted on Count 3.

### 5. Retaliation (Count 5)

In Count 5, Nieters alleges Holtan "tackl[ed] him, pepper-spray[ed] him, and arrest[ed] him in retaliation for his exercise of his First Amendment rights." ECF No. 1-1 ¶¶ 96–115. Defendants argue Holtan's conduct was not in retaliation for Nieters's press-related activity. ECF No. 36-1 at 31–36. Defendants also argue Holtan is entitled to qualified immunity on Count 5. *Id.* Nieters resists, arguing genuine issues of material fact preclude summary judgment on his First Amendment retaliation claim. ECF No. 45 at 34–39.

"[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) he engaged in a protected activity, (2) the government

official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014) (internal quotation marks and citation omitted). "Under the third prong, a plaintiff must show that the retaliatory motive was a substantial factor or but-for cause of the adverse action. In other words, the plaintiff must show he was singled out because of [his] exercise of constitutional rights." *Id.* (alteration in original) (internal quotation marks and citations omitted). The Eighth Circuit has identified a fourth prong in retaliatory arrest cases: "lack of probable cause or arguable probable cause." *Id.*; *see also Galarnyk v. Fraser*, 687 F.3d 1070, 1076 (8th Cir. 2012) ("Lack of probable cause is a necessary element of a First Amendment retaliatory arrest claim." (internal quotation marks and citation omitted)).

Nieters alleges both retaliatory arrest and retaliatory use of force. The Eighth Circuit has considered First Amendment retaliation claims wherein the plaintiff alleged the defendant engaged in multiple forms of retaliation. *See Peterson*, 754 F.3d at 601–03. In *Peterson v. Kopp*, the plaintiff was arrested and cited for misdemeanor trespass after the police officer-defendant directed him and other individuals to leave a bus stop. *Id.* at 597. During the course of the parties' encounter, the plaintiff asked the officer for his badge number and made other comments. *Id.* The officer pepper sprayed the plaintiff, handcuffed him, and issued him a citation for misdemeanor trespass. *Id.* The plaintiff alleged, in part, the officer arrested and pepper sprayed him in retaliation for exercising his First Amendment rights. *See id.* at 601–02. The court upheld the district court's grant of qualified immunity on the plaintiff's retaliatory arrest claim because the officer had "at least arguable probable cause for the arrest." *Id.* at 602. As to the plaintiff's retaliatory force claim, the court determined the plaintiff easily met the first two elements of a retaliation claim: the plaintiff's criticism of a public official constituted protected speech and that pepper spraying

someone in the face "would chill a person of ordinary firmness." *Id.* As to the third element, the court determined the plaintiff presented affirmative evidence from which a reasonable jury could find the officer pepper sprayed the plaintiff in retaliation for asking for his badge number. *Id.* at 603. The court noted the plaintiff had asked the officer for his badge number and engaged him in conversation regarding his badge number "moments" before the defendant pepper sprayed him. *Id.* The court rejected the officer's argument that plaintiff's "defiance" of the officer's order to disperse justified the use of pepper spray because the officer did not pepper spray the other present individuals for similar acts of "defiance." *Id.* The court concluded a reasonable jury could find the officer pepper sprayed the plaintiff in retaliation for his protected speech. *Id.*

Like in *Peterson*, Nieters alleges multiple acts of retaliation. Defendants are entitled to qualified immunity on Nieters's retaliatory arrest claim because, as discussed above, Holtan had at least arguable probable cause to believe Nieters violated Iowa Code § 723.3. *Cf. Peterson*, 754 F.3d at 602. As to Nieters's retaliatory use of force claim, Nieters's claim meets the first two elements: protesting and press-related activities are protected First Amendment activities and pepper spraying individuals and taking them to the ground for engaging in such activities would chill a person of ordinary firmness from continuing in such activities. *Cf. id.* However, Nieters fails to generate a genuine issue of material fact as to whether a retaliatory motive was the but-for cause of Holtan's decision to pepper spray him and take him to the ground.

Nieters points to no evidence showing Holtan singled him out because he perceived him to be a member of the press or because he was a protestor generally. *Cf. Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010) ("[T]he plaintiffs must show that the retaliatory motive was a 'but-for' cause of the [use of force]—i.e., that the plaintiffs were 'singled out' because of their exercise of constitutional rights."). The record demonstrates law enforcement officers were instructed to arrest protestors who failed to disperse. Holtan and other law

enforcement officers received information from dispatchers about a "large" group of protestors traveling westward on Locust Street after receiving dispersal orders at the Capitol grounds. The undisputed record shows Holtan was pursuing fleeing individuals directly prior to observing Nieters in front of Embassy Suites on Locust Street. Nieters was not displaying his press credentials. Nieters does not dispute he turned away from Holtan. Such circumstances support finding Holtan acted in anticipation of Nieters fleeing. As to Nieters's status as a member of the press, Nieters does not point to anything showing Holtan used force against Nieters because he was a member of the press. The undisputed record shows two other nearby members of the press were not pepper sprayed. *See* ECF No. 42 ¶¶ 79–81. Nieters was not displaying his press credentials and Holtan believed his camera straps were backpack straps. The parties dispute whether it was reasonable for Holtan to believe Nieters's camera straps were backpack straps. *See* ECF No. 45 at 38. Even if Holtan's belief was unreasonable, it is insufficient to generate a genuine issue of material fact where the undisputed record shows two other nearby members of the press were not pepper sprayed.

Nieters fails to point to anything on the record from which a reasonable jury could find Nieters's First Amendment activity was a substantial factor in Holtan's decision to use force against Nieters. As such, the Court need not consider the clearly established prong of the qualified immunity analysis. Holtan is entitled to qualified immunity on Nieters's § 1983 claim for First Amendment retaliation. Summary judgment is warranted on Count 5.

### B.   Defendants' Motion for Summary Judgment—State Law Claims

Having determined summary judgment is warranted on Nieters's deliberate indifference claims in Count 7 and Nieters's claims under 42 U.S.C. § 1983 in Counts 1, 3, and 5, the Court now considers Nieters's claims under Iowa law.

### 1. Deliberately indifferent policies, practices, customs, training, and supervision (Count 8)

Defendants move for summary judgment on Nieters' claim in Count 8 for deliberately indifferent policies, practices, customs, training, and supervision in violation of Article I, sections 6, 7, and 8 of the Iowa Constitution. ECF No. 36-1 at 36–39. Similarly to Count 7, Nieters does not resist Defendants' motion as to Count 8. ECF No. 45 at 2. As discussed above, Nieters does not resist Defendants' motion as to this claim and thus it follows that Nieters does not generate a genuine issue of material fact on this deliberate indifference claim.

The Court grants this unresisted portion of Defendants' motion for summary judgment on Count 8.

### 2. Remaining state law claims

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As discussed above, Defendants are entitled to summary judgment on Nieters's federal law claims—the only claims over which the Court has original jurisdiction. The Court can preside over state law claims ancillary to the federal claims. 28 U.S.C. § 1367(a). Because the Court grants summary judgment to Defendants on Nieters's federal claims, the Court has discretion as to whether to exercise supplemental jurisdiction over Nieters's remaining state law claims, which include: claims for violations of Article I, sections 7 and 8 of the Iowa Constitution (Counts 2, 4, and 6); and, claims under Iowa common law for malicious prosecution, false imprisonment, assault and battery, and libel (Counts 9, 10, 11, and 12). *See Zubrod v. Hoch*, 907 F.3d 568, 580 (8th Cir. 2018) ("A district court [that] has dismissed all claims over which it has original jurisdiction may decline to exercise supplemental jurisdiction." (alteration in original) (internal quotation marks omitted) (quoting 28 U.S.C. § 1367(c)(3))). In determining how to exercise its discretion, the Court considers "the stage at which the federal claims were disposed of, 'the difficulty of the state claim, the amount of judicial time and energy already invested in it, the

amount of additional time and energy necessary for its resolution, and the availability of a state forum.'" *Marshall v. Green Giant Co.*, 942 F.2d 539, 549 (8th Cir. 1991) (quoting *Koke v. Stifel, Nicolaus & Co., Inc.*, 620 F.2d 1340, 1346 (8th Cir. 1980)). "In the 'usual case' where all federal claims are dismissed on a motion for summary judgment, 'the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Starkey v. Amber Enterprises, Inc.*, 987 F.3d 758, 765 (8th Cir. 2021) (alteration in original) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). The Court declines to exercise supplemental jurisdiction. The remaining Iowa constitutional claims implicate uncharted areas of Iowa law over which the parties significantly disagree. *See* ECF No. 36-1 at 18–25, 39–42; ECF No. 45 at 15–38; *see also Baldwin v. Estherville*, 915 N.W.2d 259, 277 (Iowa 2018) (establishing the availability of "all due care" immunity to direct constitutional tort claims); *Venckus v. City of Iowa City*, 930 N.W.2d 792, 808 (Iowa 2019) (determining direct constitutional tort claims are subject to the Iowa Municipal Tort Claims Act); Iowa Code § 670.4A (setting forth a qualified immunity standard similar to federal qualified immunity effective as of June 17, 2021). Nieters's claims under Iowa common law implicate the same facts and circumstances as his state constitutional claims. Further, there is nothing to indicate a state forum is unavailable. For these reasons, the Court declines to exercise supplemental jurisdiction over Nieters's remaining claims under Iowa law in Counts 2, 4, 6, 9, 10, 11, and 12. The Court remands them to state court.]

### C.     Nieters's Motion to Strike

Nieters moves to strike an expert report by Anthony DiCara, which Defendants rely upon in their motion for summary judgment. ECF No. 46. Nieters argues the expert report should be excluded because it does not contain "expert" testimony, invades the province of the jury to decide the facts, and invades the province of the Court to instruct the jury as to the law. *Id.* ¶ 2. Defendants

resist, arguing DiCara's testimony "will assist the jury in understanding the case . . . and any risks of [the] testimony being overbroad can be mitigated through limine rulings, cross examination, presentation of contrary evidence, and jury instructions." ECF No. 47 at 1.

The Court notes Defendants primarily rely on DiCara's expert report in their arguments regarding Nieters's excessive force claim. *See* ECF No. 36-1 at 25–28. The Court does not consider DiCara's expert report in analyzing Defendants' motion as to Nieters's excessive force claim. *See supra* Part IV.A.2.c. Nor does the Court consider the expert report in analyzing any of the other § 1983 claims discussed above. Because the Court grants in part Defendants' motion and remands the remaining claims without considering DiCara's expert report, it denies Nieters's motion to strike as moot.

## V.  CONCLUSION

Nieters's does not resist Defendants' motion for summary judgment on his deliberate indifference claims under federal law in Count 7. Because Nieters does not point to any evidence demonstrating a genuine issue for trial on this deliberate indifference claim, the Court grants Defendants' motion for summary judgment on Count 7. Because the Court finds Holtan is entitled to qualified immunity on Nieters's remaining federal law claims under § 1983, Defendants are entitled to summary judgment on Counts 1, 3, and 5. As to Nieters's state law claims, the Court similarly grants Defendants' unresisted motion for summary judgment on Nieters's deliberate indifference claim under Iowa law in Count 8. Having disposed of Nieters's federal claims, the Court declines to exercise supplemental jurisdiction over Nieters's remaining claims under the Iowa Constitution and Iowa common law. Because this case was removed, the Court remands Counts 2, 4, 6, 9, 10, 11, and 12 back to the Iowa District Court for Polk County.

As to Nieters's motion to strike, the Court did not rely on the expert report at issue in Nieters's motion in analyzing Defendants' motion for summary judgment and remanding Nieters's

remaining claims. For these reasons, Nieters's motion to strike is moot.

For the foregoing reasons, **IT IS ORDERED** that Defendants Brandon Holtan, Dana Wingert, and the City of Des Moines's Motion for Summary Judgment, ECF No. 33, is **GRANTED IN PART AND REMANDED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiff Mark Edward Nieters's Motion to Strike Expert Report, ECF No. 46, is **DENIED AS MOOT.**

**IT IS SO ORDERED.**

Dated this 19th day of July, 2022.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE