# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2600
_____

Mark Edward Nieters

*Plaintiff - Appellant*

v.

Brandon Holtan; Dana Wingert; City of Des Moines, Iowa

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Southern District of Iowa
_____

Submitted: June 15, 2023
Filed: October 11, 2023
_____

Before GRUENDER, KELLY, and GRASZ, Circuit Judges.
_____

GRASZ, Circuit Judge.

  Mark Nieters sued under 42 U.S.C. § 1983 after he was pepper-sprayed and tackled by Des Moines Police Officer Brandon Holtan while photographing a protest. Nieters, who was covering the protest as a journalist, claimed Officer Holtan and other city officials violated his First and Fourth Amendment rights. The district court granted the city officials' motion for summary judgment after concluding

Officer Holtan was entitled to qualified immunity. We affirm in part and reverse in part.

## I.  Background

Consistent with our standard of review, we present the facts in the light most favorable to Nieters, the non-moving party. *Malone v. Hinman*, 847 F.3d 949, 951 (8th Cir. 2017). Following the death of George Floyd, protests occurred around Des Moines, Iowa. During four consecutive nights of protests, certain protestors damaged property and threw objects at police officers. On the fourth night of protests, Nieters attended an event at the Iowa Capitol Building to take photographs. Nieters wore a painter's mask and light-colored clothing. He also wore a blue helmet, which he believed was the international norm for journalists. Though he had press credentials on his person, they were not displayed. Officer Holtan was at the same protest as part of the Special Tactics and Response Unit.

After the organized protest ended around 8:15 p.m., Nieters followed a group of protestors who marched downtown and then returned to the Capitol around 10:45 p.m. The city officials argue that this group was violent and caused property damage, which led to law enforcement reading five dispersal orders at the Capitol between 11:30 p.m. and 11:43 p.m. After officers read the fifth order, they began arresting protestors who failed to disperse. Nieters denies hearing any dispersal orders.

At 11:46 p.m., officers deployed tear gas at the Capitol grounds. Nieters had already left the Capitol grounds before the tear gas was deployed to follow a group of protestors moving away from the Capitol. Simultaneously, dispatchers provided information about this group's movements to Officer Holtan and other officers in the area. Dispatch informed officers that windows had been broken in the area. While pursuing this group, Officer Holtan saw Nieters and believed Nieters was a rioter. Officer Holtan began running towards Nieters and told Nieters to get on the ground. Nieters put his hands up but, at some point, turned his body away to brace

himself from the charging Officer Holtan. Officer Holtan, believing Nieters intended to flee, "reached around Nieters, grabbed him around the chest, sprayed him with [pepper] spray, and took him to the ground." According to Officer Holtan, these events happened "almost simultaneously." After Officer Holtan zip-tied Nieters's wrists, Nieters informed Officer Holtan he was a member of the press. Officer Holtan then retrieved Nieters's press credentials out of his pocket. Because Officer Holtan did not want to be perceived as giving a journalist special treatment, he proceeded with Nieters's arrest. Other journalists near Nieters were not arrested.

Nieters was booked into the Polk County Jail and charged with one count of failure to disperse in violation of Iowa Code § 723.3, but the charge was later dropped as the State was "unable to sufficiently document [Nieters's] actions for charges to go forward at th[at] time." Nieters experienced sore ribs for seventeen days following his arrest and sought medical attention for pain in his right wrist.

Nieters sued Officer Holtan, Chief of Police Dana Wingert, and the City of Des Moines for a myriad of claims, including illegal seizure, excessive force, and First Amendment retaliation. The district court granted Officer Holtan summary judgment based on qualified immunity, holding: (1) Officer Holtan had at least arguable probable cause to believe Nieters violated the law; (2) Officer Holtan's use of force was objectively reasonable; and (3) Nieters's First Amendment activity was not a substantial factor in Officer Holtan's decision to use force. Nieters timely appealed.

## II. Analysis

We review a district court's grant of summary judgment based on qualified immunity de novo. *Dooley v. Tharp*, 856 F.3d 1177, 1181 (8th Cir. 2017). "Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law."

*Ryno v. City of Waynesville*, 58 F.4th 995, 1004 (8th Cir. 2023) (quoting *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1033 (8th Cir. 2007)).

"To decide whether an official is entitled to qualified immunity, we conduct a two-step inquiry: (1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate a constitutional or statutory deprivation; and (2) whether the right was clearly established at the time." *Webster v. Westlake*, 41 F.4th 1004, 1009–10 (8th Cir. 2022).

### A. Unlawful Seizure Claim

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. A warrantless arrest is unreasonable and "violates the Fourth Amendment unless it is supported by probable cause." *Webster*, 41 F.4th at 1010. "Probable cause exists to make a warrantless arrest 'when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1009 (8th Cir. 2017) (internal quotation marks omitted) (quoting *Borgman v. Kedley*, 646 F.3d 518, 523 (8th Cir. 2011)). To determine if there is probable cause, courts must "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)).

"[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). Officers are given "substantial latitude in interpreting and drawing inferences from factual circumstances." *Bell v. Neukirch*, 979 F.3d 594, 603 (8th Cir. 2020) (quoting *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999)). Even without probable cause, an officer will be "entitled to qualified immunity if there is

at least 'arguable probable cause.'" *White v. Jackson*, 865 F.3d 1064, 1074 (8th Cir. 2017) (quoting *Borgman*, 646 F.3d at 522–23). Arguable probable cause exists when "an officer mistakenly arrests a suspect believing [the arrest] is based in probable cause if the mistake is 'objectively reasonable.'" *Ehlers*, 846 F.3d at 1009 (quoting *Borgman*, 646 F.3d at 523).

At the time of Nieters's arrest, "it [was] clearly established that a warrantless arrest, unsupported by probable cause, violates the Fourth Amendment." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 478 (8th Cir. 2010). Therefore, we must determine whether his warrantless arrest was supported by either probable cause or arguable probable cause. Officer Holtan argues he had probable cause to arrest and charge Nieters with failure to disperse in violation of Iowa Code § 723.3, which states, "[a] peace officer may order the participants in a riot or unlawful assembly or persons in the immediate vicinity of a riot or unlawful assembly to disperse. Any person within hearing distance of such command, who refuses to obey, commits a simple misdemeanor."[1]

Viewing the evidence in the light most favorable to Nieters, the record demonstrates there are genuine issues of material fact that preclude summary judgment on the unlawful seizure claim. To violate the Iowa statute for failure to disperse, the individual must (1) be a participant in or in the immediate vicinity of a riot or unlawful assembly; (2) be within hearing distance of a command to disperse; and (3) refuse to disperse. *See* Iowa Code § 723.3. On the evening of the protest, even if there were members of the crowd who participated in riots or formed unlawful assemblies, there is no evidence Nieters joined any of these groups. "A person can join 'an unlawful assembly by not disassociating himself from the group

---

[1] Under Iowa Code § 723.1 "[a] riot is three or more persons assembled together in a violent and disturbing manner, and with any use of unlawful force or violence by them or any of them against another person, or causing property damage." Under Iowa Code § 723.2 "[a]n unlawful assembly is three or more persons assembled together, with them or any of them acting in a violent manner, and with intent that they or any of them will commit a public offense."

-5-

assembled and by knowingly joining or remaining with the group assembled after it has become unlawful." *White*, 865 F.3d at 1075 (quoting *State v. Mast*, 713 S.W.2d 601, 604 (Mo. Ct. App. 1986)).  But Officer Holtan admitted Nieters was not part of the group of rioters he was chasing, and that Nieters was at least fifty to seventy-five feet away from the group.  In staying apart from the group of protestors he was photographing, Nieters disassociated from the group.  Additionally, Nieters was not running away as others were.  Rather, he was standing outside a hotel wearing two cameras and taking photographs of a gas canister and fleeing protestors just prior to Officer Holtan tackling him.

Nor is there evidence in the record that Nieters was in hearing distance when any of the dispersal orders were read at the Capitol.  While Nieters was at the Capitol earlier that evening, he left prior to the dispersal orders being read and was no longer in hearing distance.  Officer Holtan first saw Nieters standing still five blocks away from where the dispersal orders were given.  Officer Holtan never gave Nieters a personal order to disperse, nor did he ask if Nieters was in the process of dispersing; instead, he "simultaneously" ordered Nieters to "get on the ground" while pepper-spraying and charging him.  A reasonable jury could conclude there was no probable cause to believe Nieters violated Iowa's dispersal statute since under the facts favorable to Nieters, he was not participating or within the immediate vicinity of a riot or unlawful assembly, was not within hearing distance of the dispersal command, and did not refuse to disperse.  Furthermore, as Nieters was standing by himself five blocks away from the Capitol, a jury could conclude that Nieters did in fact disperse.

Of course, this does not end our analysis.  Officer Holtan would still be "entitled to qualified immunity if there [was] at least 'arguable probable cause.'" *White*, 865 F.3d at 1074 (quoting *Borgman*, 646 F.3d at 522–23).  To hold arguable probable cause existed, we would need to conclude Officer Holtan mistakenly arrested Nieters believing the arrest was based in probable cause, and the mistake was objectively reasonable.  *See Ehlers*, 846 F.3d at 1009.  We cannot do so under the summary judgment standard.  When considering the clearly-established prong,

we must not resolve genuine disputes of fact in favor of Officer Holtan. *See Tolan v. Cotton*, 572 U.S. 650, 656–57 (2020). And we may not disregard exculpatory evidence when considering the totality of the circumstances to determine if arguable probable cause existed. *Bell*, 979 F.3d at 603. We must instead view *all* the disputed facts in the light most favorable to Nieters, including those exculpatory facts that showed he did not hear the dispersal order and stood by himself, apart from the group of rioters, taking photographs. Viewed in this light, Officer Holtan lacked arguable probable cause to arrest Nieters for failure to disperse. *See Baude v. Leyshock*, 23 F.4th 1065, 1073 (8th Cir. 2022) (holding that while "[p]olice may be entitled to qualified immunity protections if they arrest individual offenders with at least probable cause . . . , officers cannot enjoy such protections by alleging that 'the unlawful acts of a small group' justify the arrest of the mass") (quoting *Bernini v. St. Paul*, 665 F.3d 997, 1005 (8th Cir. 2012))).[2]

Even if we concluded Officer Holtan made a reasonable mistake about probable cause when he first tackled Nieters to the ground, Nieters immediately informed Officer Holtan that he was a journalist and he provided press credentials. Yet Officer Holtan still arrested Nieters because he did not want to be perceived as giving a journalist special treatment. Once Officer Holtan was aware Nieters was a member of the press, and had no reason to believe Nieters had been within hearing distance of the orders to disperse, it certainly was not an "objectively reasonable" mistake to believe probable cause existed for the arrest. "The continuation of even a lawful arrest violates the Fourth Amendment when the police discover additional facts dissipating their earlier probable cause." *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986); *accord Barnett v. MacArthur*, 956 F.3d 1291, 1297 (11th Cir. 2020);

---

[2]We recognize "[a] mass arrest may satisfy the Fourth Amendment's protections if the police have 'grounds to believe all arrested persons were a part of the *unit* observed violating the law.'" *Baude*, 66 F.3d at 1072 (quoting *Bernini*, 665 F.3d at 1003. But this was not a mass arrest. Police did not arrest other nearby reporters, but instead gave them an order to disperse. And, as discussed above, Officer Holtan admitted Nieters, who was at least fifty to seventy-five feet away from the group, was not part of the group of rioters he was chasing.

*Nicholson v. City of Los Angeles*, 935 F.3d 685, 691 (9th Cir. 2019); *see also Haynes v. Minnehan*, 14 F.4th 830, 835, 836 (8th Cir. 2021) (explaining, in the context of an investigatory stop, that "as new information flows in, a reasonable belief can dissolve into an unreasonable one"). This is particularly true when there is a "clearly established right to watch police-citizen interactions at a distance and without interfering." *Chestnut v. Wallace*, 947 F.3d 1085, 1090 (8th Cir. 2020). Because material factual disputes preclude awarding qualified immunity, we reverse the district court's grant of summary judgment on Nieters's unlawful seizure claim.

### B. Excessive Force Claim

We next turn to Nieters's claim for excessive force. "[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis omitted). Therefore, to succeed on the first prong of a claim of excessive force, a plaintiff must show that (1) the plaintiff was seized, and (2) the officer used unreasonable force under the totality of the circumstances. *Pollreis v. Marzolf*, 66 F.4th 726, 730 (8th Cir. 2023). In explaining reasonableness, this court has said:

> The reasonableness of a use of force turns on whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his subjective intent or motivation. We must consider the totality of the circumstances, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively fleeing or resisting arrest.

*Zubrod v. Hoch*, 907 F.3d 568, 575 (8th Cir. 2018) (quoting *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012)). Thus, "[f]orce may be objectively unreasonable when a plaintiff does not resist, lacks an opportunity to comply with

requests before force is exercised, or does not pose an immediate safety threat." *Wilson v. Lamp*, 901 F.3d 981, 989 (8th Cir. 2018).

Because officers have the right to make arrests and investigatory stops, they are permitted to use some degree of physical coercion or threats to facilitate an arrest or stop. *Id.* at 989–90. Threats to officer safety can also justify the use of force, even if the suspect is not actively resisting. *Brown v. City of Golden Valley*, 574 F.3d 491, 497 (8th Cir. 2009). But an officer's "use of force against a suspect who was not threatening and not resisting may be unlawful." *Shannon v. Koehler*, 616 F.3d 855, 864 (8th Cir. 2010). *See, e.g.*, *Small v. McCrystal*, 708 F.3d 997, 1005 (8th Cir. 2013) (holding the use of force excessive in part because the suspect was not in flight or resisting arrest), *abrogated on other grounds by Laney v. City of St. Louis*, 56 F.4th 1153, 1157 n.2 (8th Cir. 2023).

Viewing the totality of the circumstances in the light most favorable to Nieters, there are genuine issues of material fact on whether there was an excessive use of force. To begin, Officer Holtan arrested Nieters for failure to disperse—a misdemeanor. Second, while Officer Holtan focuses on the fact there had been "hours of criminal activity occurring" and that he was "under constant threat of harm from active rioters," he cannot point to any facts suggesting an immediate threat to his safety or the safety of others. *Zubrod*, 907 F.3d at 575.

Instead, Officer Holtan hangs his hat on the third factor, whether the suspect was actively fleeing or resisting, arguing a reasonable officer would view Nieters turning away as an attempt to flee. The problem is with the timing of Officer Holtan's actions. He testified he "almost simultaneously" gave Nieters the order to get on the ground, while charging and pepper-spraying him. Nieters was a non-violent alleged misdemeanant who was not given time to comply with the order to get on the ground prior to Officer Holtan's use of force. *See Wilson*, 901 F.3d at 989. When Officer Holtan began charging, Nieters had his hands in the air and stood still but, at some point, Nieters turned his body away from Officer Holtan. Taking this fact in the light most favorable to Nieters, a jury could conclude a reasonable

officer would have interpreted Nieters's action in turning his body as an attempt to shield himself or the two cameras he wore from the impending impact of Officer Holtan running at him rather than an attempt to flee. *See Smith v. Kan. City, Mo. Police Dep't*, 586 F.3d 576, 581 (8th Cir. 2009).

Next, we must determine whether Nieters's rights were clearly established in this scenario. "Broadly speaking, [t]he right to be free from excessive force in the context of an arrest is clearly established under the Fourth Amendment." *Peterson v. Kopp*, 754 F.3d 594, 600 (8th Cir. 2014) (alteration in original) (quoting *Small*, 708 F.3d at 1005), *abrogated on other grounds by Laney*, 56 F.4th at 1157 n.2. While we are not to define the issue "at a high level of generality," *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011), "[a] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Winslow v. Smith*, 696 F.3d 716, 738 (8th Cir. 2012) (quoting *Shekleton v. Eichenberger*, 677 F.3d 361, 367 (8th Cir. 2012)). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *accord Glover v. Paul*, 78 F.4th 1019, 1024–25 (8th Cir. 2023).

Numerous cases show that the identified general constitutional rule applies with obvious clarity to the conduct in question. In *Rokusek v. Jansen*, we stated "every reasonable official would have understood that he could not throw [the plaintiff]—a nonviolent, nonthreatening misdemeanant who was not actively resisting—face-first to the ground" even though the plaintiff failed to comply with certain orders. 899 F.3d 544, 546, 548 (8th Cir. 2018). In *Bauer v. Norris*, we concluded that even verbal abuse by a nonthreatening misdemeanant does not justify the use of force. 713 F.2d 408, 412–13 (8th Cir. 1983). Finally, in *Smith v. Kansas City, Missouri Police Department*, we held it was clearly established that an officer violates a citizen's rights by "knocking a *non*-resisting suspect to the ground . . . ." 586 F.3d at 582. Thus, Nieters had a clearly established right to be free from excessive force. *See Westwater v. Church*, 60 F.4th 1124, 1131 (8th Cir. 2023).

### C. First Amendment Retaliation Claim

Finally, we turn to Nieters's First Amendment retaliation claim. "The First Amendment prohibits laws 'abridging the freedom of speech.'" *Houston Cmty. Coll. Sys. v. Wilson*, 142 S. Ct. 1253, 1259 (2022) (quoting U.S. Const. amend. I). Thus, "as a general matter," it "prohibits government officials from subjecting individuals to retaliatory actions after the fact for having engaged in protected speech." *Id.* (cleaned up) (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019)). To succeed on a First Amendment retaliation claim Nieters must demonstrate: (1) he engaged in protected First Amendment activity; (2) Officer Holtan took an adverse action that would chill a person of ordinary firmness from continuing in that protected activity; and (3) there was a but-for causal connection between Nieters's injury and Officer Holtan's retaliatory animus. *Quraishi v. St. Charles Cnty., Mo.*, 986 F.3d 831, 837 (8th Cir. 2021) (setting forth the elements generally); *Laney*, 56 F.4th at 1157 (holding but-for causation is required to satisfy the third element). For a retaliatory arrest claim there is an additional element: the defendant lacked probable cause or arguable probable cause to arrest. *Just*, 7 F.4th at 768. However, "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 139 S. Ct. at 1727.

Nieters argues Officer Holtan committed two acts of retaliation: the use of force and the arrest. There is no debate whether the First Amendment protected Nieters's activity at the protest. Nor do the parties question whether Officer Holtan's actions would chill a person of ordinary firmness from continuing in the activity. The dispute centers on whether Nieters can establish but-for causation and the lack of probable cause for the retaliatory arrest claim.

"Even viewing the facts in a light most favorable to [Nieters], causation is missing." *Laney*, 56 F.4th at 1157. Nieters must show he was "singled out because of [his] exercise of constitutional rights." *Peterson*, 754 F.3d at 602 (alteration in original) (quoting *Baribeau*, 596 F.3d at 481). "The causal connection is generally

-11-

a jury question unless the question is so free from doubt as to justify taking it from the jury." *Id.* at 603 (cleaned up) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). Nieters fails to point to any evidence in the record to show that Nieters's First Amendment expression was the but-for cause of Officer Holtan's decision to arrest Nieters or to use force. Though Nieters points to Officer Holtan's admission that he believed Nieters was a protestor, this statement is insufficient to show that Officer Holtan singled out Nieters from other protestors. Because Nieters failed to show the causal connection between his protected expression and Officer Holtan's adverse action, we affirm the district court's grant of summary judgment.

### III.  Conclusion

We reverse the district court's order granting summary judgment on the unlawful seizure and excessive force claims but affirm the district court's order granting summary judgment dismissing the retaliation claim.

GRUENDER, Circuit Judge, concurring in part and dissenting in part.

In my view, the district court correctly granted Officer Holtan's motion for summary judgment on Nieters's unlawful-arrest claim. Thus, I respectfully dissent from Part II-A of the court's opinion.

As the court recognizes, even if a police officer violates a federal right, he is still entitled to qualified immunity unless the unlawfulness of his conduct was clearly established. *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018). To be clearly established, the plaintiff must show that the legal principle was "settled law" dictated by controlling authority or a robust consensus of cases. *Id.* at 63; *see also Martin v. Turner*, 73 F.4th 1007, 1009-10 (8th Cir. 2023). The clearly established standard "requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *Wesby*, 583 U.S. at 63. In the unlawful-arrest context, we also consider as a part of the clearly established analysis whether the officer "reasonably but mistakenly concluded that probable cause was present."

*Brown v. City of St. Louis*, 40 F.4th 895, 900-01, 903 (8th Cir. 2022). If the officer made such a reasonable mistake, he had arguable probable cause and is entitled to qualified immunity. *Id.* at 900-01. These "demanding" principles protect all but the plainly incompetent or those who knowingly violate the law. *Wesby*, 583 U.S. at 63. Applying them, I would hold that Officer Holtan had at least arguable probable cause to arrest Nieters for failure to disperse.

Under Iowa law: "A peace officer may order . . . persons in the immediate vicinity of a riot or unlawful assembly to disperse. Any person within hearing distance of such command, who refuses to obey, commits a simple misdemeanor." Iowa Code § 723.3. Before Nieters's arrest, dispersal orders were given to an unlawful assembly at the Iowa Capitol grounds. Despite these orders, a "large" group of people at the Capitol remained together and began travelling westward down Locust Street. Nieters, a journalist, though not displaying press credentials, chose to follow this group. Dispatchers provided real-time information to Officer Holtan and other officers about this group's movements through Des Moines. Dispatchers notified officers of the group's continued presence on Locust Street and that some members of the group were running north on a side street.

As Officer Holtan chased those running on the side street back towards Locust, he encountered Nieters, who wore a helmet and respirator. Officer Holtan placed him under arrest. Given Nieters's appearance and the information previously relayed by dispatch, a reasonable officer could have concluded that he had probable cause to believe that Nieters was in the immediate vicinity of an unlawful assembly, heard dispersal orders, and failed to comply with the order. *See* Iowa Code § 723.3; *cf. White v. Jackson*, 865 F.3d 1064, 1075-76 (8th Cir. 2017) ("The officers arrested [plaintiff] while he was standing with a group of people in an area that officers had been attempting to clear. . . . [Officers] could have reasonably concluded that [plaintiff] . . . chose not to disperse.").

As the district court held, the totality of the circumstances confirms that Officer Holtan had arguable probable cause to believe that Nieters failed to disperse.

The court now reverses this decision because Nieters claims never to have heard the dispersal orders and because Nieters was fifty to seventy-five feet away from the nearest person Officer Holtan had previously been chasing. *See ante* at 6-7. To my mind, these two facts, the first of which Officer Holtan could not have known, do not show that Officer Holtan's actions were objectively unreasonable given Nieters's appearance, position on Locust Street, and the information relayed to Officer Holtan by dispatch.

The court then assumes that, even if Officer Holtan had arguable probable cause when he seized Nieters, it was extinguished when "Nieters immediately informed Officer Holtan that he was a journalist and he provided press credentials." *Ante* at 7. The court mentions that Officer Holtan did not want to be seen as giving a journalist special treatment and that this somehow further disproves (or at least creates a dispute of fact about) Officer Holtan's arguable probable cause. *Ante* at 7.

The court does not explain how these post-seizure revelations negate the facts that it previously assumed established arguable probable cause—perhaps because we have previously rejected the court's implied logic. First, the court cannot consider Nieters's post-arrest conduct to determine whether Officer Holtan had arguable probable cause at the time of the seizure. *See Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008) ("As probable cause is determined at the moment the arrest was made, any later developed facts are irrelevant to the probable cause analysis for an arrest." (internal quotation marks omitted)); *Lambert v. City of Dumas*, 187 F.3d 931, 935 n.6 (8th Cir. 1999) ("The relevant inquiry is whether the arresting officers had probable cause to arrest [plaintiff] at the time of the arrest, not whether the officers' decision to arrest [plaintiff] can be justified by information learned after the arrest."); *see also Torres v. Madrid*, 592 U.S. ---, 141 S. Ct. 989, 995, 998 (2021) (noting that an arrest is a "seizure of the person" that occurs when an officer uses force with intent to restrain).

Second, even if the court could consider the post-arrest conduct, to the extent that Nieters's claimed status as a member of the press tended to show that he did not

fail to disperse, Officer Holtan was free to disregard Nieters's claim in light of the facts known to him. *Cf. Borgman v. Kedley*, 646 F.3d 518, 524 (8th Cir. 2011) (explaining that officers "need not rely on an explanation given by the suspect"); *Wesby*, 583 U.S. at 67-68 (noting broad agreement "that innocent explanations—even uncontradicted ones—do not have any automatic, probable-cause-vitiating effect"). Third, the court's analysis apparently turns in part on Officer Holtan's stated desire not to be seen as giving a journalist special treatment, despite the Supreme Court's admonition that an arresting officer's "state of mind" or "subjective reason for making the arrest" is "irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

Demonstrating the reasonableness of Officer Holtan's decision and further proving that he was not plainly incompetent when making it, "neither the panel majority nor [Nieters] have identified a single precedent—much less a controlling case or robust consensus of cases—finding a Fourth Amendment violation under similar circumstances." *See Wesby*, 583 U.S. at 65. Nor do they assert that this is the "obvious case where a body of relevant case law is not needed." *See id.* (internal quotation marks omitted). In fact, no controlling decision prior to the court's opinion here had prohibited an arrest for failure to disperse under Iowa law under the "particular circumstances" before Officer Holtan. *See id.* at 63. Instead, the court masks its incomplete analysis by doing what the Supreme Court has repeatedly told us not to do: define the putative clearly established right at a high level of generality. *See ante* at 5 ("At the time of Nieters's arrest, it was clearly established that a warrantless arrest, unsupported by probable cause, violates the Fourth Amendment." (internal quotation marks omitted)).

For these reasons, I conclude that Nieters failed to show a clearly established right to be free from arrest for failure to disperse. I therefore would affirm the district court's grant of qualified immunity and summary judgment to Officer Holtan on Nieters's unlawful-arrest claim.

_____