IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| MARK EDWARD NIETERS,<br>    Plaintiff,<br>v.<br>BRANDON HOLTAN,<br>    Defendant. | No. 4:21-cv-00042-RGE-HCA<br><br>ORDER TERMINATING<br>TEMPORARY PROTECTIVE ORDER |

In this case, Plaintiff Mark Edward Nieters sues Defendant Brandon Holtan individually and in his official capacity as a law enforcement officer of the City of Des Moines. *See* Pet. ¶ 2, ECF No. 1-1. On June 24, 2024, Holtan sought a protective order under Federal Rule of Civil Procedure 26(c) requiring that certain internal investigative personnel records concerning Holtan be treated as confidential and closed to public access until trial. Def.'s Mot. Protective Order, ECF No. 93. On June 26, 2024, Magistrate Judge Helen C. Adams issued a ruling on the order, directing Holtan to provide the internal investigative personnel records to the Court for in camera review and further ordering that the records shall be temporarily treated as confidential until "further order of the Court." Order Granting in Part Def.'s Mot. Protective Order, ECF No. 99. The Court has received and reviewed the records at issue and for the reasons set forth below terminates the temporary protective order.

Without a protective order limiting disclosure, "[t]he Federal Rules of Civil Procedure 'do not place any limits on what parties may do with information they acquire through the discovery process.'" *Williams v. City of Burlington*, No. 3:19-cv-00043-SMR-HCA, 2020 WL 11027939, at *2 (S.D. Iowa June 17, 2020) (Adams, M.J.) (quoting Fed. R. Civ. P. 26, Rules and Commentary). A party seeking to limit public disclosure of documents shared during discovery may seek a protective order from the Court, which may issue, "for good cause, . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ."

Fed. R. Civ. P. 26(c)(1). The Eighth Circuit has explained this "good cause" standard places the burden on the movant "to show the necessity of [the protective order's] issuance, which contemplates a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973) (internal quotation marks and citation omitted); *accord Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2.*, 197 F.3d 922, 926 (8th Cir. 1999) (stating the movant had the burden of demonstrating his claim of harm "based on more than stereotypical and conclusory statements"); *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) ("The injury must be shown with specificity."). "Where the moving party makes a sufficient showing that public disclosure will cause it harm, the burden then shifts to the nonmoving party to demonstrate that open disclosure outweighs any private interests in nondisclosure." *Northbrook Dig. LLC v. Vendio Servs., Inc.*, 625 F. Supp. 2d 728, 757-58 (D. Minn. 2008).

"Because of liberal discovery and the potential for abuse, the federal rules 'confer[] broad discretion on the [district] court to decide when a protective order is appropriate and what degree of protection is required.'" *Misc. Docket Matter No. 1*, 197 F.3d at 925 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984)); *accord Seattle Times*, 497 U.S. at 36 ("The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."). To assist in the exercise of this substantial discretion, an influential opinion by the Third Circuit in *Pansy v. Borough of Stroudsburg*, articulated seven factors the Court should consider when determining whether a protective order should limit public disclosure:

1) Whether disclosure will violate any privacy interests;
2) Whether the information is being sought for a legitimate purpose or for an improper purpose;

2

      3)      Whether disclosure of the information will cause a party embarrassment;
      4)      Whether confidentiality is being sought over information important to public health and safety;
      5)      Whether the sharing of information among litigants will promote fairness and efficiency;
      6)      Whether a party benefiting from the order of confidentiality is a public entity or official; and
      7)      Whether the case involves issues important to the public.

*Shingara v. Skiles*, 420 F.3d 301, 306 (3d Cir. 2005) (referencing *Pansy*, 23 F.3d at 787–91). In discussion of these factors, *Pansy* indicated the privacy interests of the first factor are given "diminished" weight "when the party seeking protection is a public person subject to legitimate public scrutiny." *Pansy*, 23 F.3d at 787 (internal citations omitted). Further, "[w]hile preventing embarrassment may be a factor satisfying the 'good cause' standard, 'an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious.'" *Id.* (quoting *Cipollone*, 785 F.2d at 1121).

      In opinions addressing motions—like Holtan's motion—concerning internal investigations of police departments or police personnel records, courts have emphasized certain *Pansy* factors also salient here. Two of these opinions emphasize public interest in internal investigations of police officers, and one notes that serious allegations of police brutality concern "[t]he general public's health and safety." *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997) (discussing an internal investigation of allegations of police torture); *see also Welsh v. City & Cnty of San Francisco*, 887 F. Supp. 1293, 1302 (N.D. Cal. 1995) ("The public has a strong interest in assessing the truthfulness of allegations of official misconduct, and whether agencies that are responsible for investigating and adjudicating complaints of misconduct have acted properly and wisely."). This public interest—and the importance of disclosure—was not reduced by the fact that some of the police department's internal documents, including complaint files, were "already a matter of public record." *Wiggins*, 173 F.R.D. at 229. Moreover, the court in *Wiggins v. Burge* reasoned, consistent with *Pansy*, that the privacy interests of police officers were diminished due to their status as public

3

officers. *Id.* (citing *Pansy*, 23 F.3d at 787-88). *Wiggins* also rejected, as reasons for granting a protective order, the possibility that public release could "have a chilling effect on future police internal investigations" or that allegations discussed in the internal investigation might be false. *Id.*

A further factor raised by one of these cases and also relevant here is the "state's legislative judgment that confidentiality is mandated." *Welsh*, 887 F. Supp. at 1301. The court in *Welsh v. City & Cnty of San Francisco* stated, "[w]hile this Court may give some weight to privacy rights protected by state statutes, the 'ultimate responsibility for deciding how much weight to ascribe to such interests, and how that weight compares with the significance of competing interests, must reside with the federal courts.'" 887 F. Supp. at 1301 (citation omitted). Judge Adams reached a similar conclusion in *Williams v. City of Burlington*, noting the fact that Iowa law treats a document as confidential may provide guidance as to whether there is good cause for a protective order, but it "does not control a federal court's determination as to whether good cause has been shown under Rule 26(c)." 2020 WL 11027939, at *3.

In light of this case law, the Court finds the temporary restraining order must be terminated. In his motion requesting a protective order, the only support offered for Holtan's request was that Iowa Code § 80F.1(20) requires treatment of the records at issue as confidential. ECF No. 93 ¶ 4. At the pretrial conference on July 2, 2024, where the Court provided the parties an opportunity to be heard on the issue of the requested protective order, Holtan's counsel further argued that public dissemination of the personnel records could motivate officers subject to future investigations to exhibit less candor, hindering those investigations. This argument, however, is insufficient to carry Holtan's burden. Holtan's reference to Iowa statute and future investigations by the Des Moines Police Department do not identify or evidence sufficiently specific harms threatened by the denial of his request for a protective order. *Cf. Cipollone*, 785 F.2d at 1121; *accord Pansy*, 23 F.3d at 786; *Misc. Docket Matter No. 1*, 197 F.3d at 926. Further, even if this articulation of harm were

adequately specific, the Court finds these harms do not outweigh the public's interest in access to the content of the internal investigation. The public has a weighty interest in access to the records of a police department's internal investigation of a police officer—in part because such records concern a public official, and in part because those records concern a matter of public safety. *Cf. Wiggins*, 173 F.R.D. at 229; *Welsh*, 887 F. Supp. at 1302; *Pansy*, 23 F.3d at 787–88. Moreover, as public officials, the privacy interests of police officers such as Holtan are of reduced weight in the Rule 26(c) analysis. *Cf. Wiggins*, 173 F.R.D. at 229. Similarly, the generic risk of a "chilling effect," without further evidence of distortion or concealment by officers, has limited weight. *Cf. id.* The relative weight of these considerations justifies denial of the requested protective order, and the balance of these considerations is not altered by the state's treatment of the records at issue as confidential—particularly given that this treatment does not apply when "otherwise provided by law." Iowa Code § 80F.1(20); *cf. Welsh*, 887 F. Supp. at 1301.

For the foregoing reasons,

**IT IS ORDERED** that the temporary protective order, ECF No. 99, is **TERMINATED**. With the exception of pages 35 to 37, which the parties agree need not be publicly accessible, the internal investigatory personnel records provided for in camera review shall not be subject to a protective order. Pages 35 to 37 shall be sealed per agreement of the parties.

**IT IS FURTHER ORDERED** that Defendant Brandon Holtan's Motion for Protective Order, ECF No. 93, is **DENIED**.

**IT IS SO ORDERED.**

Dated this 12th day of July, 2024.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE